Argued and submitted on September 27, 2007, reversed and remanded May 7,
petition for review denied July 2, 2008 (345 Or 94)

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

SARAH THERESA GOSS,
*Defendant-Respondent.*

Washington County Circuit Court
D061384T; A133391

184 P3d 1155

Susan G. Howe, Senior Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Erica Herb, Deputy Public Defender, argued the cause for respondent. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

The state appeals an order suppressing evidence entered before defendant's trial on a charge of driving under the influence of intoxicants. The state assigns error to the trial court's determination that the police lacked reasonable suspicion that defendant had committed that crime when she was stopped by the police for questioning. We review for errors of law on the record, ORS 138.220, and reverse.

On the afternoon of January 28, 2006, Kaela Thompson and Mary-Alice Crume were both working at the front counter of Scotty's Drive-In in Forest Grove. They observed defendant get out of the driver's side of an older red automobile and enter the restaurant. Crume took her order while Thompson stood close by. Both quickly concluded that defendant was intoxicated. At the suppression hearing, Crume testified that defendant "smell[ed of] a strong odor" and was walking "a little off-balance." Thompson stated that defendant was "just acting strange" and "wasn't talking right." Defendant had trouble reading the charge slip and signing her name for payment, had to make two orders because she forgot to include food in the first order, accused Thompson and Crume of taking her keys, and was being loud and "ma[de] a scene" by repeatedly asking for condiments after being told several times that they were included with her meal. Based on those actions, Crume and Thompson suspected "[w]ithin * * * a minute" that defendant was intoxicated.

While defendant's order was being prepared to go and defendant was searching for her keys, Thompson went to the back office and telephoned police because she was concerned that defendant would soon be driving her car and Thompson "[didn't] want [defendant] to hurt someone." Thompson reported to the police that defendant was intoxicated and was about to leave the restaurant. She provided defendant's name (which she had obtained from defendant's credit card) and vehicle information, together with her own name and location. After she placed the call to police, Thompson returned to the front counter. At that time, defendant asked Thompson where the bathroom was located.

Defendant then went to the bathroom entrance, which was located outside at the rear of the building.

Officer Swiger of the Forest Grove Police Department received a call from police dispatch about a suspected intoxicated driver at Scotty's Drive-In. The dispatcher provided Swiger with a description of the driver's vehicle and told him that the owner of the vehicle was a Hispanic female with brown hair. Swiger arrived at the restaurant within 10 minutes of Thompson's call. He positioned his patrol car behind defendant's vehicle and went inside to talk to Thompson and Crume. Thompson told Swiger that the suspect was in the restroom at the back of the building. About that same time, Officer Ellensberg arrived at the scene. Ellensberg told Swiger to go outside and wait next to defendant's vehicle.

Once outside, Swiger spoke with a restaurant customer who was eating in her car that was parked next to defendant's vehicle. That customer reported that "the female driver of the vehicle had just come around the west corner, had actually seen us and then had went back around." Swiger recorded the customer's name and telephone number and then walked to the back of the building. An unidentified person yelled at Swiger that "they went that way," "into the parking lot [of the Budget Inn]." Swiger walked toward the Budget Inn parking lot, which was located directly behind Scotty's Drive-In, and saw a female with brown hair walking away from him. There were no other persons in the vicinity. Swiger called to the woman, who he later confirmed was defendant, to come "chat with [him] for a little bit," and she complied. Swiger observed that as defendant was walking towards him she was "stumbling from side to side," "constantly raising her arms from her side to maintain her balance," and "paying particular attention to her foot placement as she was walking." Based on her appearance, behavior, and performance of field sobriety tests, defendant was subsequently arrested for driving while under the influence of intoxicants.

Defendant moved to suppress all of the evidence obtained by the police, arguing that the police unlawfully stopped her, restrained her by transporting her from the

place where she was stopped, searched her by asking her to perform field sobriety tests, and arrested her. The trial court granted the motion to suppress on the ground that the stop was illegal and did not consider the other grounds for the motion, concluding that the police lacked reasonable suspicion to believe that defendant was under the influence of intoxicants at the time of the stop. The court determined that Thompson and Crume were required to articulate, at the suppression hearing, specific reasons why they felt that defendant's impairment was due to alcoholic intoxication before the court could conclude that Swiger had reasonable suspicion to stop defendant. Referring to the testimony of Thompson and Crume, the trial court stated:

"[S]how me something in [their] testimony that specifically refers to indicia of intoxication. [Defendant] had trouble with the receipt, she was having trouble focusing, and she couldn't find her keys, and she has to go to the bathroom. I mean, there's any number of reasons why people could do that, that don't relate to alcohol."

On appeal, the state contends that the trial court erred in evaluating the reasonableness of Thompson's conclusion that defendant was intoxicated as part of its determination whether, at the time of the stop, Swiger reasonably suspected that defendant had committed a crime. Instead, the state asserts that the relevant issue is the information known to Swiger at the time of the stop. The state argues that Swiger had the requisite reasonable suspicion required to stop defendant based on a reliable citizen informant's report. The state posits that Thompson's call to the police to report a suspected intoxicated driver was reliable for three reasons: (1) if the report were false, Thompson would have exposed herself to civil or criminal liability for making it; (2) the report was based on Thompson's personal knowledge; and (3) Swiger confirmed Thompson's report by observing defendant and her vehicle substantially as described by Thompson.

In response, defendant argues that Swiger lacked reasonable suspicion to stop defendant because the stop was based on only a bare assertion that defendant appeared impaired. In defendant's view, Swiger failed to corroborate

Thompson's report through his own observations and, therefore, under the totality of the circumstances, Swiger lacked reasonable suspicion for the stop. Defendant also asserts, as an alternative basis for affirmance, that Swiger lacked reasonable suspicion that defendant was actually the woman who prompted Thompson's report. We reject defendant's contentions and agree with the state's arguments.

ORS 131.615(1) limits the authority of police to stop and question persons. It provides:

> "A peace officer who reasonably suspects that a person has committed or is about to commit a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

As described by ORS 131.605(5), " '[r]easonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 to 131.625." The Supreme Court elaborated on those statutes in *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993):

> "The statutory standard for the stopping and questioning of a person concerning his or her possible criminal activity was intended to be less than the standard for probable cause to arrest. The standard is reasonable suspicion, and it requires an objective test of observable facts. Whether the suspicion is reasonable often will depend on the inferences drawn from the particular circumstances confronting the officer, viewed in the light of the officer's experience. If a police officer is able to point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime, the officer has 'reasonable suspicion' and hence may stop the person for investigation."[1]

(Footnote and citations omitted.)

An informant's report that is reliable can furnish the required "specific and articulable facts" to support an inference that criminal activity is afoot. *State v. Shumway*, 124 Or

---

[1] That statutory standard codifies the protection afforded by the federal and state constitutions against unreasonable seizures. *State v. Valdez*, 277 Or 621, 625-26, 561 P2d 1006 (1977); *State v. Black*, 80 Or App 12, 14-15, 721 P2d 842 (1986).

App 131, 133, 861 P2d 384 (1993), *rev den*, 318 Or 459 (1994). That reliability is assessed using a three-factor test. *State v. Villegas-Varela*, 132 Or App 112, 115, 887 P2d 809 (1994) (citing *State v. Black*, 80 Or App 12, 721 P2d 842 (1986)). In *Villegas-Varela* we said:

> "[The first factor] is whether the informant is exposed to possible criminal and civil prosecution if the report is false. That factor is satisfied if the informant gives his or her name to law enforcement authorities or if the informant delivers the information to the officer in person. The second factor is whether the report is based on the personal observations of the informant. * * * The final factor is whether the officer's own observations corroborated the informant's information. The officer may corroborate the tip either by observing the illegal activity or by finding the person, the vehicle and the location substantially as described by the informant."

132 Or App at 115 (citations omitted).

Applying those standards to the facts in this case, we conclude that Swiger had a reasonable suspicion, at the time of the stop, that defendant had driven her vehicle while intoxicated.[2] Thompson's report was reliable. Thompson gave her name and whereabouts to the police, thereby exposing herself to possible civil and criminal liability if her report was false. Thompson's opinion that defendant was intoxicated was based on her personal observation of defendant's actions—actions that prompted her to voluntarily initiate the report to police.[3]

Finally, Thompson's report was corroborated by Swiger as he continued his investigation outside the restaurant. Swiger found defendant and her vehicle substantially in the same area as reported. Defendant's older model red car was in the restaurant's parking lot, and defendant was found only a short distance away. Swiger knew that the suspect

---

[2] The trial court determined that Swiger stopped defendant when he beckoned her for a chat. Neither party disputes that conclusion on appeal.

[3] Whether a person is under the influence of intoxicants is a matter of common knowledge, about which a lay witness is competent to render an opinion. *State v. Bybee*, 131 Or App 492, 497, 884 P2d 906 (1994).

was an intoxicated woman with brown hair who had driven the red car and had gone behind the restaurant building to use the restroom.[4] Swiger found out, from the customer parked next to defendant's car, that the driver of the red car had just come out of the restroom and was walking toward the front of the restaurant, but then turned around and went back behind the building when she saw Swiger. When Swiger located defendant in the motel parking lot adjacent to the back of the restaurant, there were no other people in the vicinity, and she had brown hair.

The totality of the circumstances known to Swiger at the time of the stop included not only the report of a reliable informant, but also defendant's avoidance of a police investigation that she apparently concluded was directed at her. *Cf. State v. Minchue*, 173 Or App 520, 524, 24 P3d 386 (2001) (flight as circumstantial evidence of guilt). Based on those specific facts, it was reasonable for Swiger to conclude that defendant was the intoxicated driver of the red car. Those specific and articulable facts linked defendant to the crime under investigation by Swiger.

■■ The trial court erred in requiring justification by Thompson and Crume of their conclusion that defendant was intoxicated. What those witnesses knew and whether their conclusions were reasonable is immaterial to the analysis of reasonable suspicion. What is relevant are the facts that were known by Swiger, *i.e.*, what Thompson reported to the police and what Swiger observed. The existence of reasonable suspicion depends on the information known to the police. The trial court erred in requiring Thompson and Crume to articulate at the suppression hearing specific reasons for their beliefs that defendant's impairment was due to alcohol intoxication.

Defendant moved to suppress evidence for reasons other than the legality of the stop. On remand, the trial court should address the remaining parts of defendant's motion.

Reversed and remanded.

---

[4] Contrary to the description provided by the police dispatcher, defendant is not Hispanic in appearance. That fact is relevant to, but not dispositive of, whether Swiger had reasonable suspicion that defendant was the suspected intoxicated driver.