Argued and submitted January 28, affirmed December 29, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MARK WILLIAM MITCHELE,
aka Mark William Mitschele,
*Defendant-Appellant.*

Multnomah County Circuit Court
080230693; A138931

251 P3d 760

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Linda Wicks, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894. He assigns error to the trial court's denial of his motion to suppress evidence found on his person, contending that the arresting officers unlawfully stopped him without reasonable suspicion, which led to the discovery of methamphetamine in his pocket.[1] We affirm.

■        We review the denial of a motion to suppress for legal error and defer to the trial court's findings of historical fact if there is sufficient evidence to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Consistently with that standard, we take the following facts from the record of the suppression hearing. Portland Police Officer Slyter and his partner received a radio call around 11:00 a.m. regarding a suspicious person in a neighborhood in southeast Portland that is prone to criminal activity, specifically car prowls, car thefts, and burglaries. Although the caller, who was a resident of the neighborhood, was relaying information second-hand from his wife, he gave his name, address, and telephone number to the officers and told them that there was a "guy possibly casing, walking up and down [the] street, [and] looking at homes[.]" The caller further described the suspicious person as a white male who was wearing a black and red stocking hat, a black jacket, and black sweat pants. Slyter and his partner arrived at the scene about 20 minutes after receiving the call.

There is a public pathway in the neighborhood that connects a street to the Springwater Trail, a public walking and bicycling trail that abuts many houses in the neighborhood and that has been a significant problem due to its use as an escape route by people who have committed crimes in the neighborhood. Slyter and his partner found defendant, a white male, on the pathway, wearing black pants, a black

---

[1] On appeal, defendant challenges the trial court's ruling under ORS 131.615 and Article I, section 9, of the Oregon Constitution. Our analysis of defendant's rights under ORS 131.615 is substantially the same as an analysis of his rights under Article I, section 9. *See State v. Toevs*, 327 Or 525, 534, 964 P2d 1007 (1998). Therefore, for clarity, we analyze both arguments jointly and use the term "stop" throughout this opinion to refer generally to the temporary restraint of defendant's liberty for investigatory purposes.

shirt or jacket, and a stocking hat. As the officers drove toward defendant, Slyter saw defendant "tuck" himself into nearby foliage, which, according to Slyter, "would definitely cause one to [have to] look harder to recognize [that] somebody was standing in there."

The officers got out of their patrol car, and Slyter asked defendant if he would walk back up the path to the car, about 15 feet away, and talk with them. Defendant did so, and the officers asked him why he was in the area. Defendant responded that he was waiting for a friend who was walking to meet him. Slyter then asked defendant if he was on probation or parole or had any outstanding warrants. Defendant said that he was on probation and told Slyter the name of his probation officer, who Slyter then called to determine whether defendant was in compliance with the terms of his probation. While Slyter was calling the probation officer, Slyter's partner told him that defendant had refused to consent to a search of his person. Slyter told the probation officer the address that defendant had given as his residence and also that defendant had refused to consent to a search. The probation officer indicated that the address was not the residential address on record in defendant's probation file. Defendant's probation officer told Slyter to again ask defendant for consent to search his person and that, if defendant refused, the probation officer would place a detainer on defendant for violating the terms of his probation by failing to report an address change. Defendant refused the search request, and Slyter arrested him on the detainer. Slyter then conducted an inventory of defendant's belongings before transporting him and found methamphetamine in his pockets.

Based on the discovery of the methamphetamine, defendant was charged with unlawful possession of methamphetamine. ORS 475.894. Before trial, defendant moved to suppress all evidence obtained during the inventory, arguing that the evidence was the product of an unlawful stop of him in violation of ORS 131.615 and of the state and federal constitutions. At the suppression hearing, Slyter testified about the events leading to defendant's arrest and the subsequent inventory.

The trial court determined that defendant reasonably believed that he was not free to leave and, therefore, was stopped, when Slyter asked defendant to walk back to the car and speak with the officers. The court further determined that

> "the information available to [Slyter], both in the context of the radio call * * * and what he saw when he got to the scene, which is to say he saw a person that * * * he reasonably believed to be the same person that he had the radio call about[,] * * * [a]nd the behavior of the person, in terms of backing away * * * from the presence of the police, were sufficient to give [Slyter] subjective and objective * * * reasonable suspicion that there was criminal activity[.]"

From that premise, the court concluded that the inventory was lawful.

Accordingly, the court denied the suppression motion. Following a stipulated facts trial, defendant was convicted of the possession offense.

■ On appeal, defendant assigns error to the denial of his suppression motion, renewing his state statutory and constitutional arguments. He contends that he was stopped at the beginning of his encounter with Slyter and that the informant's tip and his furtive movements did not establish reasonable suspicion justifying the stop. Specifically, defendant argues that the informant's tip was not reliable and, even if it was, that it did not disclose criminal activity, and that his furtive movements alone did not justify the stop. Although the state concedes that defendant was stopped at the beginning of the encounter, it responds that the totality of the circumstances provided sufficient specific and articulable facts to support the officers' reasonable suspicion that defendant was engaged in criminal activity, *viz.*, casing homes for potential burglary, and, therefore, that defendant was lawfully stopped. We agree with the state.

■■ The critical question in this case is whether the officers had reasonable suspicion to stop defendant. An officer's stop of a person must be justified by reasonable suspicion of criminal activity. The standard has subjective and objective components. An officer must subjectively suspect that the person stopped is involved in criminal activity. *State v. Hammonds/Deshler*, 155 Or App 622, 626, 964 P2d 1094

(1998). Here, Slyter testified that he suspected that defendant was engaged in criminal activity. Reasonable suspicion is established when an officer forms an objectively reasonable belief under the totality of the circumstances that a person may have committed or may be about to commit a crime. ORS 131.605(5); ORS 131.615(1). An officer must identify specific and articulable facts that produce a reasonable suspicion, based on the officer's experience, that criminal activity is afoot. *See Ehly*, 317 Or at 80 (discussing the statutory standard for stopping a person suspected of criminal activity). Therefore, to determine whether Slyter and his partner had reasonable suspicion to stop defendant, our analysis focuses on whether the specific and articulable facts in this case—the report from the informant, defendant's furtive movements, and defendant's presence on a common escape route in a high-crime area—are sufficient to support a reasonable suspicion that defendant was committing or about to commit a crime.

A reliable report from a citizen informant that criminal activity is imminent may be sufficient on its own to provide the required specific and articulable facts. *State v. Goss*, 219 Or App 645, 650, 184 P3d 1155, *rev den*, 345 Or 94 (2008). Three factors guide our determination of the reliability of such a report. *State v. Hames*, 223 Or App 624, 629, 196 P3d 88 (2008). The first factor is whether, if the report is false, the informant may be subject to potential criminal prosecution and civil liability. As pertinent to this case, that factor is satisfied if the informant gives his or her name to law enforcement authorities. The second factor is whether the report is based on the personal observations of the informant, which may be inferred by an officer if the information in the report contains sufficient detail to show that it was not fabricated and the report may be recognized through common experience as having been reliably obtained. Finally, we consider whether the officer's observations corroborate the information provided by the informant, which may occur when the officer observes the illegal activity or finds the person, vehicle, or location substantially as the informant described. *Id.*

Here, the first factor was satisfied because Slyter and his partner had the name, address, and telephone number of the caller who had described defendant's appearance

and suspicious activities in the neighborhood. Also, the third factor was satisfied when the officers arrived in the neighborhood about 20 minutes after receiving the call and found defendant substantially as the caller had described him, *viz.*, a white male wearing black pants, a black shirt or jacket, and a stocking cap. Because the officers found defendant substantially as the caller had described him, in a neighborhood prone to burglary, and on a trail commonly used as an escape route by people committing burglaries and thefts in the neighborhood, they sufficiently corroborated the information that the caller had provided.[2]

Nevertheless, defendant argues that the second factor for determining the reliability of the citizen informant's report was not satisfied because the caller was relaying information second-hand from his wife and, hence, there was no basis to infer that the caller had personally observed what he had reported. Although reporting a spouse's observations does not present the normal scenario under which we conclude that the second factor is satisfied, the distinction advanced by defendant does not necessarily undermine the reliability of the report in this case. The report's details, including the description of defendant's clothing, location, and actions, are sufficient to show that neither the caller nor the caller's wife had fabricated the report. Further, defendant fails to present a reason why either the caller or the caller's wife would fabricate the information, and their spousal relationship suggests that the caller would and did believe the source of the information and that the information had been reliably obtained.

Those three factors are not determinative of whether a citizen informant's report is reliable; they are merely

---

[2] Defendant argues that the officers did not see him engaging in behavior that would suggest that he was committing or about to commit a burglary or another crime and, therefore, did not corroborate the report. He contends that he was merely standing on a public pathway waiting for a friend to arrive. However, we have previously held that possible lawful explanations for behavior do not prevent the behavior from giving rise to a reasonable suspicion of criminal activity. *See, e.g., Hammonds / Deshler*, 155 Or App at 626. Further, defendant was on a pathway commonly used as an escape route in a neighborhood prone to burglaries while acting in a way that aroused the suspicions of a resident of the neighborhood, the caller's wife, causing the caller to make the report to the police. Therefore, defendant's argument does not undermine the sufficiency of the officers' corroboration.

intended to serve as an aid in evaluating the reliability of such a report. *State v. Killion*, 229 Or App 347, 356, 211 P3d 367, *rev den*, 347 Or 349 (2009). In this case, although the second factor is not satisfied in the strictest sense, we conclude that the report received by Slyter and his partner is reliable and may be considered as part of the specific and articulable facts supporting the officers' suspicion justifying the stop.

■        As noted above, defendant argues that, even if the caller's report was reliable, the information that it conveyed was merely a conclusory observation that defendant was "casing" houses, which does not support an objectively reasonable suspicion that defendant was committing or about to commit a crime. Specifically, defendant contends that the report did not indicate why the caller's wife had determined that defendant was engaged in such conduct.

        In *State v. Perrin*, 143 Or App 123, 125, 923 P2d 1249 (1996), *rev den*, 325 Or 368 (1997), a named informant reported having been involved in an accident and that an intoxicated driver had left the scene. The informant followed the other driver and pointed her out to the police officers investigating the report. The officers then stopped the defendant, who was eventually arrested for driving under the influence of intoxicants. In granting a motion to suppress the evidence of the defendant's condition at the time of the stop, the trial court focused on the fact that the evidence adduced at trial regarding the informant's report was too conclusory to support the state's argument that the officers had reasonable suspicion. But, on appeal, we determined that

> "[t]he fact that [the informant] reported an 'intoxicated driver' rather than describing the details that led him to that opinion does not, in and of itself, negate reasonable suspicion. As the [Supreme Court] said in [*State v. Lichty*, 313 Or 579, 585, 835 P2d 904 (1992)], 'People often speak in the shorthand of opinions or conclusions, not in the form of a recitation of pure fact.' "

*Perrin*, 143 Or App at 128; *see also Goss*, 219 Or App at 652 ("The trial court erred in requiring justification by [a witness and an informant] of their conclusion that defendant was intoxicated. What those witnesses knew and whether their conclusions were reasonable is *immaterial* to the analysis of

reasonable suspicion. What is relevant are the facts that were known by [the officer], *i.e.*, what [the informant] reported to the police and what [the officer] observed." (Emphasis added.)). Based on that determination about the informant's conclusory statement and the reliability of his report, we concluded in *Perrin* that the officers had reasonable suspicion to stop the defendant.

Similarly here, the fact that the caller concluded that defendant was "possibly casing, walking up and down [the] street, [and] looking at homes," does not serve to make the officers' suspicion unreasonable solely because it does not indicate why the caller had arrived at that conclusion. The caller's report, like the informant's report in *Perrin*, is reliable and, hence, can properly be included in the totality of the circumstances that we can consider to determine if the officers' suspicion that defendant was committing or was about to commit a crime was objectively reasonable.

The totality of the circumstances known to Slyter when the stop occurred included not only the caller's report, the frequency of burglaries in the neighborhood, and defendant's presence on a frequently used escape route, but also defendant's furtive movements when the officers approached in their patrol car. *See Goss*, 219 Or App at 652 (determining that the defendant's avoidance of a police investigation targeted at her added support to the conclusion that the officers who stopped her had reasonable suspicion to do so); *cf. State v. Butkovich*, 87 Or App 587, 591, 743 P2d 752, *rev den*, 304 Or 548 (1987) ("[I]n the absence of any evidence of criminal activity, furtive gestures provide no basis for a stop."). Defendant attempted to hide from Slyter and his partner when he saw them approaching his location. Slyter saw defendant make that furtive movement; therefore, defendant's attempt to hide from the officers adds support to the conclusion that the officers' suspicion that defendant was engaging in or about to engage in criminal activity, namely activity consistent with preparing to burglarize residences in the neighborhood, was objectively reasonable.

In light of the foregoing analysis, we conclude that defendant's encounter with Slyter and his partner was a lawful stop under ORS 131.615 and, in turn, a lawful seizure

under Article I, section 9, of the Oregon Constitution. Other than his challenge to the lawfulness of the stop, defendant does not challenge the lawfulness of his arrest or the ensuing inventory. We therefore affirm the trial court's denial of defendant's suppression motion.

Affirmed.