On respondent's petition for reconsideration filed December 22, 2010, and appellant's response to petition for reconsideration filed February 3, reconsideration allowed; opinion (239 Or App 116, 243 P3d 880 (2010)) modified and adhered to as modified April 20, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HILTON LEVIAS,
*Defendant-Appellant.*

Multnomah County Circuit Court
070532320; A138429

255 P3d 611

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Michael A. Casper, Assistant Attorney General, for petition.

Peter Gartlan, Chief Defender, and Kristin Carveth, Deputy Public Defender, Office of Public Defense Services, for response.

Before Ortega, Presiding Judge, and Schuman, Judge, and Rosenblum, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

The state seeks reconsideration of our opinion in this case, *State v. Levias*, 239 Or App 116, 243 P3d 880 (2010), in which we reversed defendant's convictions for unlawful possession of heroin and cocaine because the trial court erred in denying defendant's motion to suppress evidence obtained after a consent search of his person. We allow reconsideration, modify our opinion, and adhere to it as modified.

Defendant was charged with two drug offenses and sought suppression of evidence obtained during a consent search following a stop of the car in which he was riding as a passenger. The trial court denied the motion to suppress, and defendant ultimately was convicted. Defendant appealed, and we concluded that the trial court erred in denying defendant's motion to suppress. Relying on our opinion in *State v. Ashbaugh*, 225 Or App 16, 24, 200 P3d 149 (2008), we held that, in light of the surrounding circumstances, which included the officer's inquiry whether defendant had been engaged in unlawful activity, a person in defendant's position could have believed that when the officer requested his consent to search, he was the subject of a criminal investigation and that, for that reason, his liberty of movement was significantly restricted and he was stopped. *Levias*, 239 Or App at 124.

Shortly after we issued that opinion, the Supreme Court reversed *Ashbaugh*, 349 Or 297, 244 P3d 360 (2010), and the state now contends that, under the Supreme Court's newly announced framework, police did not stop defendant when they asked for his consent to search. In *Ashbaugh*, the court said that the proper inquiry is not whether a reasonable person in the defendant's position "could" believe that he had been stopped, but whether a reasonable person under the totality of the circumstances "would" believe that the law enforcement officer had intentionally and significantly interfered with the person's liberty and freedom of movement. In evaluating whether a reasonable person would believe that the officer had interfered with the defendant's liberty or freedom of movement, the court addressed whether the content of the officer's questions or the officer's manner or actions would reasonably be perceived as a show of authority that

restricted the defendant's freedom of movement. The court held in *Ashbaugh* that, under the facts of that case, in light of the surrounding circumstances, there was no evidence that would support a conclusion that the officer, by asking the defendant whether she had anything illegal in her purse and then asking for consent to search, had stopped the defendant. 349 Or at 317-18.

We agree with the state that the Supreme Court's opinion has altered the analysis here. Under *Ashbaugh*, the operative inquiry is not whether, as we said in our original opinion in this case, a reasonable person in defendant's circumstances "could" believe that he or she was the subject of a police investigation. Rather, the inquiry is whether a reasonable person in the defendant's circumstances *would* believe that the officer intentionally and significantly restricted the defendant's liberty or freedom of movement. 349 Or at 316. In the state's view, in light of the casual and polite tone of the officers' inquiries and the absence of a physical show of authority, a reasonable person in defendant's position would not believe that his liberty was restricted.

We conclude otherwise. In light of the coercive circumstances, defendant was stopped even under the newly announced *Ashbaugh* standard. Defendant had been a passenger in a car that had been stopped in a high-crime area late at night. Officer Murphy's overhead lights were activated. As Murphy walked from his patrol car toward the stopped car, he began to question defendant, who was attempting to walk away from the scene. When defendant agreed to talk to him, Murphy then called for cover in defendant's presence and asked defendant if he had a crack pipe. Defendant replied that he did not, and Murphy then asked defendant if he had anything illegal on him. When defendant did not reply, Murphy asked defendant if he would mind if Murphy searched him, and defendant said, "Yeah, you can search me. Go ahead."

Murphy testified that he did not search defendant immediately. When backup officer Yee arrived, Murphy told Yee that defendant had not been patted down or searched, and then Murphy went to speak with the driver of the stopped car. Yee, in turn, testified that when he arrived, he

parked behind the patrol car of two reserve officers who were already at the scene and activated his overhead lights. Yee testified that defendant was sitting on the curb behind the stopped car. Yee asked defendant if he had anything on him that the officer should be concerned about. Defendant replied, "No." Yee then asked for defendant's consent to search, and defendant replied, "Sure, go ahead." At that point, there were three patrol cars on the scene, and at least two of them had overhead lights flashing. Defendant had been passed off from Murphy, who had stopped the car, to Yee, who once again questioned defendant about possible unlawful conduct. By that time, a reasonable person in defendant's position would be aware that he was the subject of a police investigation. We conclude, further, that the circumstances, including Yee's second inquiry about illegal activity, the time of the encounter and the presence of three police cars, would lead a reasonable person to believe that defendant's liberty or freedom of movement had been intentionally and significantly restricted.

Reconsideration allowed; opinion modified and adhered to as modified.