Argued and submitted November 30, 2010, reversed and remanded July 27, 2011

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## EARNEST JUNA DAMPIER,
*Defendant-Respondent.*

Benton County Circuit Court
CM0920035; A142285

260 P3d 730

Samuel A. Kubernick, Assistant Attorney General, argued the cause for appellant. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Erik Blumenthal, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Landau, Judge pro tempore.

SERCOMBE, P. J.

## SERCOMBE, P. J.

The state appeals a pretrial order suppressing all evidence discovered after defendant, the backseat passenger in a parked car, was stopped by police officers who suspected that he was engaged in a drug transaction. ORS 138.060(1)(c). The trial court concluded that the stop was not supported by reasonable suspicion. The state argues that, under the totality of the circumstances, the officer had an objectively reasonable belief that defendant was engaged in, or was about to engage in, criminal activity and that the stop was therefore lawful. Thus, the state concludes that the trial court should not have suppressed the evidence obtained as a result of that stop. We agree with the state and, therefore, reverse.

The relevant facts are undisputed. At 3:10 a.m., Philomath Police Officers Gurski and Umberger were driving westbound on Main Street when they noticed a bicyclist riding eastbound without a light. The officers turned around to contact the bicyclist. By the time they located the bicyclist, he was stopped in front of the Galaxy Motel, a place known for drug activity. The bicyclist was talking to defendant, the backseat passenger of a vehicle parked on the side of the road in front of the motel. The bicyclist was "right up against the car."

Gurski approached the bicyclist and, as he did, smelled the "overwhelming odor of unburned marijuana." Gurski thought that he had interrupted a drug deal.[1] He "started to talk to [the bicyclist]." The bicyclist took a step away from Gurski and brought his hands near his waistband, where Gurski noticed a bulge in his clothing. Fearing the bicyclist could have a concealed weapon, Gurski grabbed hold of him, pushed him against the car, and patted him down. The bulge turned out to be a soda can, but the search also revealed a small glass container of marijuana in the bicyclist's back pocket and a pipe in his front pocket. Gurski placed the bicyclist in handcuffs and put him in the back of

---

[1] Gurski testified that he had investigated "at least a half-dozen" drug trafficking cases and "close to a hundred" possession cases during his time as an officer.

his patrol car. The bicyclist denied buying the marijuana from defendant.

Gurski then returned to the parked car, where he "could still smell the overwhelming odor of marijuana." He asked defendant what he was doing there. Defendant replied that he and his two companions had been at the "Civil War" football game in Corvallis, had gotten lost on their way back to Portland, and had stopped to ask for directions. Gurski asked "where the marijuana was." Defendant said that he did not have any marijuana. Umberger and Gurski then asked the car's occupants, including defendant, to leave the vehicle. Gurski sought the driver's consent to search the vehicle for weapons or drugs. The driver consented.

Gurski searched the "backseat area" of the vehicle and found a resealable plastic bag containing 18 individually packaged baggies of marijuana "stuffed in-between the seats directly underneath where [defendant] was sitting." The bag contained far less than an ounce of marijuana. In response to Gurski's questioning, defendant admitted that the marijuana was his and stated that he had purchased it in Portland. The encounter occurred within 1,000 feet of Philomath High School.

Defendant was charged with unlawful delivery of marijuana within 1,000 feet of a school, ORS 475.862, and delivery of marijuana for consideration, ORS 475.860. Before trial, defendant moved to suppress the evidence obtained during the encounter, arguing that his rights under Article I, section 9, of the Oregon Constitution had been violated.[2] Specifically, defendant argued that the stop was not supported by reasonable suspicion and that the subsequent search of the vehicle was a product of the unlawful stop. After a hearing on the motion, the trial court concluded that "the objective evidence did not support reasonable suspicion to justify the stop and therefore all evidence obtained as a result of the

_____

[2] Article I, section 9, provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]" Although defendant cited a number of other provisions in support of his motion to suppress, on appeal the parties organize their arguments around Article I, section 9. Consequently, we analyze the issues under that provision.

unlawful stop must be suppressed." The trial court did not make findings or elaborate on the basis for its conclusion.

On appeal, the state concedes (as it did before the trial court) that defendant was stopped when asked to get out of the vehicle but argues that the stop was supported by reasonable suspicion.[3] Defendant responds that the circumstances did not give rise to reasonable suspicion, noting particularly that the officers "never observed defendant and the cyclist exchange anything, touch hands, or secret[e] anything into their pockets." In any event, defendant argues that "the justification for the stop dissipated once the bicyclist denied buying drugs from defendant, and defendant provided the entirely reasonable explanation that he had stopped to ask the bicyclist for directions." We conclude that the stop was supported by reasonable suspicion.

To be lawful under Article I, section 9, "a warrantless stop must be supported by a reasonable suspicion of criminal activity." *State v. Lay*, 242 Or App 38, 43, 252 P3d 850 (2011). A law enforcement officer has reasonable suspicion to temporarily detain a person if the officer is "able to point to specific and articulable facts, interpreted in the light of the existing circumstances and his experience," that the person has committed or is about to commit a crime. *State v. Rutledge*, 243 Or App 603, 610, 260 P3d 532 (2011) (citing *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993)); *see also* ORS 131.605 (" 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts * * *."). Reasonable suspicion "does not require that the facts as observed by the officer conclusively indicate illegal activity but, rather, only that those facts support the reasonable inference of illegal activity by that person." *State v. Hiner*, 240 Or App 175, 181, 246 P3d 35 (2010).[4]

---

[3] We note that the trial court did not identify the point at which the encounter became a "stop," *i.e.*, a seizure requiring police justification. To the extent the parties' arguments to the trial court addressed that issue, they assumed that the stop occurred when the officers ordered defendant and his companions out of the car.

[4] We recognize that reasonable suspicion has both a subjective and objective component. *See Lay*, 242 Or App at 45 (so stating). Because Gurski testified that he believed defendant and the bicyclist were engaged in a drug transaction, the subjective component of reasonable suspicion is not at issue in this case.

Here, at the time defendant and the car's other occupants were ordered out of the car, Gurski had observed the bicyclist standing "up against the car," talking to defendant through an open window; it was 3:10 a.m. in an area known for drug activity; there was an overwhelming odor of marijuana near the bicyclist and defendant; Gurski had found marijuana on the bicyclist; and, after placing the bicyclist in his patrol car, Gurski had returned to the car, where he continued to smell an overwhelming odor of marijuana.

Defendant argues that those facts do not indicate that he and the bicyclist were engaged in anything more than an ordinary interaction between fellow citizens: there was no loitering for an extended period of time, no hand-to-hand exchange, and no furtive gestures suggesting a drug transaction between defendant and the bicyclist. We agree with defendant that his "mere presence" in a high crime area while conversing with the bicyclist is insufficient to establish a reasonable suspicion of illegal activity. *See, e.g., Rutledge*, 243 Or App at 610 (facts were insufficient to establish reasonable suspicion where the defendant "had just left a motel that the police believed was involved in drug activity, was in a car with a person suspected of drug activity, and acted nervously when asked about her purse"); *State v. Briggs*, 229 Or App 660, 667 n 3, 212 P3d 1276, *rev den*, 347 Or 446 (2009) (citing cases to the same effect). Nonetheless, this is not a case where the defendant was merely present and talking to another person in a high crime area. Rather, the bicyclist with whom defendant was talking was found to have had drugs on him and, after the bicyclist was arrested and placed in the patrol car, the odor of marijuana persisted near defendant's open window. Those facts, in combination, are sufficient to give rise to a reasonable inference that defendant was engaged in or was about to engage in a drug transaction. *See State v. Johnson*, 120 Or App 151, 157, 851 P2d 1160, *rev den*, 318 Or 26 (1993) (explaining that aroma of methamphetamine emanating from the defendant was sufficient to arouse a reasonable suspicion that he was either in possession of the drug or had recently been in a place where it was manufactured); *State v. Derrah*, 191 Or App 511, 518, 84 P3d 1084, *rev den*, 337 Or 84 (2004) (noting that the "scent of

marijuana, emanating from a residence, without more, is sufficient to support" a finding of probable cause).

There is no requirement, as defendant contends, that the officer witness a hand-to-hand exchange in order to reasonably suspect a drug transaction has taken place or is about to take place. *See State v. Loud*, 149 Or App 250, 255, 942 P2d 814, *rev den*, 326 Or 58 (1997) ("We disagree with defendant that the officers were required to observe a hand-to-hand transaction between the person they suspected was selling drugs and defendant in order to have reasonable suspicion[.]"). Instead, the test is whether, under the totality of the circumstances, a reasonable officer could infer the existence of criminal activity. *See id.* ("An officer need only form a belief 'that is objectively reasonable under the totality of the circumstances' that a person has committed a drug offense.").

Moreover, we reject defendant's argument that any reasonable suspicion had "dissipated" because the bicyclist denied purchasing marijuana from defendant and defendant offered an explanation for his presence in front of the motel. "[W]e have previously held that possible lawful explanations for behavior do not prevent the behavior from giving rise to a reasonable suspicion of criminal activity." *State v. Mitchele*, 240 Or App 86, 92 n 2, 251 P3d 760 (2010) (citing *State v. Hammonds/Deshler*, 155 Or App 622, 626, 964 P2d 1094 (1998)).

Defendant alternatively argues that he was stopped at two earlier points in the encounter: first, when Gurski "placed [the bicyclist] against [the] vehicle to search and arrest him"; and, second, when the officers "headed back towards [the] car" after arresting the bicyclist. We conclude that defendant was not stopped, in the constitutional sense, at either of those two points during the encounter. Thus, we need not determine whether the officers had reasonable suspicion to detain defendant at those times.

A person is seized under Article I, section 9,

"(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an

individual of that individual's liberty or freedom of movement; or (b) if a reasonable person under the totality of the circumstances *would* believe that (a) above has occurred."

*State v. Ashbaugh*, 349 Or 297, 316, 244 P3d 360 (2010) (emphasis in original). In determining whether a reasonable person would believe that the officer had interfered with the defendant's liberty or freedom of movement under part (b) of that test, we examine "whether the content of the officer's questions or the officer's manner or actions would reasonably be perceived as a show of authority that restricted the defendant's freedom of movement." *State v. Levias*, 242 Or App 264, 266-67, 255 P3d 611 (2011).[5]

Here, there is no evidence that, at the time the bicyclist was pushed up against the car, Gurski had orally addressed defendant or directed any inquiries toward him. Similarly, Gurski's actions—pushing the bicyclist against the car and searching him—were not aimed at defendant. At that point, defendant was essentially a bystander to Gurski's investigation of the bicyclist. Although, as a practical matter, defendant's ability to leave may have been impeded by those actions, there is nothing to suggest that the interference was intended to restrict defendant's freedom of movement or was anything other than an incidental inconvenience. *Cf. State v. Dominguez-Martinez*, 321 Or 206, 213, 895 P2d 306 (1995) (officer unlawfully seized occupants of a car when, although he told them that they were free to go, he continued to lean on the open car door and thus physically prevented them from leaving); *see also State v. Holmes*, 311 Or 400, 410, 813 P2d 28 (1991) ("A street or public place encounter does not amount to an Article I, section 9, 'seizure' merely because the encounter may involve inconvenience or annoyance for the citizen and the other party to the encounter is known to be a law enforcement officer."). Moreover, nothing in the record demonstrates that the lights on the patrol car were turned on, that defendant's license was obtained, or that the officers gave any indication that defendant was not free to leave. In sum, there was no reasonable basis to conclude that, at the

---

[5] We understand defendant to argue only that an objectively reasonable person in his circumstances would believe that the officer had interfered with his liberty or freedom of movement.

time the officer placed the bicyclist against the car, the officer's words or actions constituted a show of authority that intentionally and significantly restricted defendant's freedom of movement or that a reasonable person would believe that such a restraint had occurred.

We also conclude that defendant was not seized when the officers "headed back" toward defendant after arresting the bicyclist. Again, there were no verbal inquiries or commands directed at defendant. And again, although the officers had made some show of authority in arresting the bicyclist, that conduct did not suggest that defendant was the subject of investigation or that he was not free to leave. The officers merely approached defendant. That action alone is not threatening or coercive and, in fact, is a necessary predicate to even the most harmless police-citizen encounters. *See Ashbaugh*, 349 Or at 317 (examining whether officer's manner or actions involved a show of authority and noting that officer's request to search the defendant's purse was "not accompanied by any physical action that could be construed as threatening or coercive"); *Holmes*, 311 Or at 410 ("[L]aw enforcement officers remain free to approach persons on the street or in public places, seek their cooperation or assistance, request or impart information, or question them without being called upon to articulate a certain level of suspicion in justification[.]"). Indeed, the officer and defendant were not yet engaged in even "mere conversation." Under those circumstances, we conclude that a reasonable person in defendant's circumstances would not believe that the officers had intentionally and significantly restricted or interfered with his freedom of movement.

We need not decide at what subsequent point defendant was constitutionally seized because we conclude, consistently with our analysis above, that the officer had reasonable suspicion that defendant was engaged in illegal activity at the time the officer returned to the car and smelled an overwhelming odor of marijuana. Accordingly, we conclude that the trial court erred in suppressing the evidence obtained as a result of the officer's encounter with defendant.

Reversed and remanded.