Argued and submitted November 7, 2012, Woodburn High
School, Woodburn, affirmed August 14, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICHARD A. FAUBION,
aka Richard Faubion,
*Defendant-Appellant.*

Deschutes County Circuit Court
09FE1146SF; A147053

308 P3d 337

David O. Ferry, Deputy Public Defender, argued the cause
for appellant. With him on the brief was Peter Gartlan, Chief
Defender, Office of Public Defense Services.

Tiffany Keast, Assistant Attorney General, argued the
cause for respondent. With her on the brief were John R.
Kroger, Attorney General, and Anna M. Joyce, Solicitor
General.

Before Ortega, Presiding Judge, and Haselton, Chief
Judge, and De Muniz, Senior Judge.

DE MUNIZ, S. J.

**DE MUNIZ, S. J.**

In this criminal case, defendant entered a conditional guilty plea[1] to a charge of unlawful possession of methamphetamine, ORS 475.894, following the trial court's denial of a motion to suppress evidence obtained during a traffic stop. Defendant appeals the judgment of conviction and assigns error to the trial court's denial of his motion to suppress. The issues in this case are when during the police officer's contact with defendant was defendant "seized" and whether the officer had reasonable suspicion to investigate the crimes of minor in possession of alcohol and furnishing alcohol to a minor when defendant was seized. As explained below, we assume without deciding that defendant was seized when an officer asked him to identify himself, and we conclude that the officer had reasonable suspicion at that time. Therefore, we affirm the judgment.

On September 17, 2009, at 9:50 p.m., Deschutes County Deputy Sheriff Jackson observed a vehicle stopped on remote county land marked "[d]ay use only park, no camping." Jackson knew that the area was frequented by people using drugs and alcohol. As Jackson approached in his marked patrol car and began to pass the parked vehicle, the driver turned on the vehicle's lights and drove away. Jackson turned his patrol car around to follow the vehicle and, as he followed, noticed that the registration stickers and Oregon identifier on the license plate were covered by the plate holder. Jackson initiated a traffic stop because the vehicle's plate was obscured.[2] He noted that there were four occupants in the car.

---

[1] ORS 135.335(3) provides:

"With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea."

[2] Under ORS 803.550(2)(c), the offense of illegal alteration or display of a registration plate includes use of "[a]ny frame or plate holder that obscures the numbers, letters or registration stickers, so as to render them unreadable."

Jackson approached the vehicle, explained to the driver the basis for the stop, and requested her identifying information. The driver provided Jackson with her registration and insurance information but did not have her driver's license with her. She orally provided her name and date of birth, which indicated that she was 18 years old. While talking to the driver, Jackson detected a smell of alcohol coming from the interior of the car but was unable to determine whether the driver had consumed alcohol. Jackson also determined that the front-seat passenger appeared to be under the influence of a stimulant. According to Jackson, each occupant of the vehicle appeared to be between the ages of 18 and 25.

Jackson returned to his vehicle to perform a warrant and status check on the driver. Because of the remote location of the stop, Jackson also requested that a backup officer respond to the scene. While Jackson was standing outside his police vehicle waiting for the results of the identification verification and warrants check, he observed defendant, who was in the backseat, and the front-seat passenger "making motions below the rear windshield so I could not see, as if they were moving items to and from each other." Jackson believed that defendant and the front-seat passenger were "trying to disguise movements" that "looked like they were placing or pushing items back and forth to each other."

The driver's warrant check came back clear and indicated that she had a valid driver's license. Jackson decided to write the driver a citation for the obscured license plate; however, he did not write the citation at that time. Instead, Jackson determined that, because, among other things, the driver was 18 years old, there was a smell of alcohol emanating from the vehicle, one passenger appeared to be under the influence of stimulants, defendant and another passenger apparently had passed some items back and forth while attempting to hide those motions from him, and all of the occupants of the vehicle appeared to be between the ages of 18 and 25, he had reasonable suspicion to investigate the

violation of minor in possession of alcohol[3] and the crime of furnishing alcohol to a minor.[4]

Jackson returned to the vehicle to investigate whether there was a possible minor in possession of alcohol or an adult who had or was furnishing alcohol to a minor. He asked the other occupants in the vehicle for their names and dates of birth to ensure that they were at least 21 years of age. In response, the three passengers either gave Jackson an identification card or orally provided their names and dates of birth. Defendant orally provided his name and date of birth. The information provided to Jackson indicated that the front-seat passenger was 22 years old, that defendant was 23 years old, and that the other backseat passenger was 25 years old. As Jackson obtained that information, he smelled alcohol on defendant's breath.

A backup officer, Huey, arrived while Jackson was speaking to the passengers. Jackson returned to his vehicle and ran all three passengers' names to confirm their ages and identities. In doing so, Jackson learned that defendant was on felony probation for possession of marijuana and that the terms of defendant's probation included a no-alcohol clause.

---

[3] ORS 471.430 provides, in relevant part:

"(1) *** Except when such minor is in a private residence accompanied by the parent or guardian of the minor and with such parent's or guardian's consent, a person under 21 years of age may not have personal possession of alcoholic beverages.

"(2) For the purposes of this section, personal possession of alcoholic beverages includes the acceptance or consumption of a bottle of such beverages, or any portion thereof or a drink of such beverages. ***

"*****

"(4)(a) Except as provided in paragraph (b) of this subsection, a person who violates subsection (1) or (3) of this section commits a Class B violation.

"(b) A person commits a Class A violation if the person violates subsection (1) of this section by reason of personal possession of alcoholic beverages while the person is operating a motor vehicle, as defined in ORS 801.360."

[4] ORS 471.410 provides, in relevant part:

"(2) No one other than the person's parent or guardian may sell, give or otherwise make available any alcoholic liquor to a person under the age of 21 years. ***

"*****

"(5) Except as provided in subsection (6) of this section, a person who violates subsection (1) or (2) of this section commits a Class A misdemeanor. ***"

Next, Jackson requested that a canine officer respond to the scene because it appeared that one passenger in the vehicle was under the influence of stimulants, another passenger, defendant, was on felony probation for drug possession, those two passengers had been making motions as though passing objects back and forth between one another while Jackson checked the driver's information, and the vehicle had been parked in an area known to be frequented by persons using drugs and alcohol, all of which led Jackson to suspect that there could be drugs in the car. After requesting a canine officer, Jackson returned to the vehicle and asked defendant to step out of the car.

At some point during those events, Jackson called defendant's probation officer and advised him that defendant had been consuming alcohol. The probation officer told Jackson to release defendant and have him report to the probation officer in the morning. Jackson continued to smell alcohol on defendant's breath once defendant was out of and away from the vehicle. Jackson patted down defendant's waistband to check for weapons and did not discover any. The canine officer, Officer Fraker, arrived at the scene shortly before the weapons frisk and observed the frisk. Fraker then deployed his drug dog. The dog alerted on the vehicle, indicating that there were drugs present, at the front passenger side of the vehicle. At that time, the officers asked the other occupants of the vehicle to step outside so that the vehicle could be searched.

A search of the vehicle revealed two partially consumed bottles of alcohol, but no drugs. One bottle was found under the driver's seat, with the cap end protruding several inches from under the seat at the place where defendant had been sitting. The other bottle was found inside a purse on the backseat of the vehicle behind the front passenger seat. After the bottles of alcohol were found, Jackson returned to his vehicle where defendant had been waiting and advised defendant of his *Miranda* rights.

Fraker requested permission to search defendant because, based on his training and experience, he believed that, during Jackson's earlier frisk, defendant may have been concealing a weapon. Defendant consented and emphasized

that Fraker could check his pockets. For safety reasons, Fraker asked defendant to separate his legs for the pat down, and defendant separated his legs about three inches. Fraker noticed that defendant was shaking uncontrollably. Fraker asked defendant again to separate his legs, and defendant moved his legs an inch or two further apart. Fraker asked defendant a third time to separate his legs, and defendant pointed his toes outward without actually moving his legs. According to Fraker, at this point in the weapons frisk, he demanded that defendant separate his legs "[b]ecause now I have got extreme fear of a weapon and I can't even—I am in a position where I can't even let go of him because I have got a situation where I know I have got an immediate threat." Because defendant's evasive actions led Fraker to believe that he was concealing an item that posed a risk to officer safety, Fraker testified that at that point he needed to complete the pat down with or without defendant's permission.

Defendant complied with Fraker's demand and spread his feet wide apart. At that time, a scale fell out of his left pant leg. The scale landed on the ground and bounced away from defendant. Fraker was concerned that defendant may have had an item that posed a threat to officer safety. He asked defendant whether there were drugs in his right sock and shoe area. Fraker asked three times, and defendant did not respond. Eventually, defendant indicated that there were baggies in his right shoe, but that they did not belong to him. Defendant later stated that the baggies were his.

Fraker continued to pat defendant down and felt a methamphetamine pipe in defendant's sock. Fraker then permitted defendant to remove the items, which included the pipe and three baggies, from his shoe and sock. The baggies contained a white substance that Fraker believed to be methamphetamine.

On appeal, defendant asserts that the evidence (methamphetamine) obtained when defendant was removed from the vehicle and searched should have been suppressed under Article I, section 9, of the Oregon Constitution. According to defendant, he was seized when Jackson requested his identifying information and ran a warrants check, and, at

that time, Jackson did not have reasonable suspicion that defendant had engaged in criminal activity. Alternatively, defendant argues that, if Jackson did have reasonable suspicion that he was a minor in possession of alcohol or an adult furnishing alcohol to a minor, that suspicion dissipated once defendant and the other passengers in the vehicle all provided Jackson with dates of birth that indicated that they were over the age of 21.

ORS 810.410 governs the authority of a police officer to stop a vehicle for a traffic violation, and that statute describes both what police officers can and cannot do during a traffic stop. *See, e.g., State v. Rodgers/Kirkeby,* 347 Or 610, 620, 227 P3d 695 (2010) ("[B]y implication, [ORS 810.410] proscribes any further action by the police [beyond that specifically authorized] \* \* \* unless [that further action] has some basis other than the traffic infraction." (Internal quotation marks omitted; brackets in *Rodgers/Kirkeby.*)).

When the driver of a vehicle is stopped for a traffic infraction,

"[i]t is a truism that all passengers in a validly stopped car have been 'stopped,' at least physically. However, such a stop is not a 'seizure' of those passengers for constitutional purposes. *See* [*State v. Holmes,* 311 Or 400, 410, 813 P2d 28 (1991)] (discussing circumstances in which police-citizen encounters are not 'seizures'). It also is true that an officer may take reasonable steps respecting the passengers, including, for example, asking the passengers to exit the vehicle so the officer may search the vehicle, assuming that the driver has consented to the search or that it otherwise is justified. However, an officer's further exercise of coercive authority over the passengers after they are out of the vehicle may, in certain circumstances, constitute a seizure."

*State v. Amaya,* 336 Or 616, 630, 89 P3d 1163 (2004).

In *Rodgers/Kirkeby,* the Supreme Court commented that,

"[t]o put the matter another way, constitutionally, Article I, section 9, protects persons and effects from unreasonable searches and seizures by requiring a judicially authorized warrant supported by probable cause authorizing a search

or seizure. There are, however, certain limited exceptions to the warrant and probable cause requirements. One such exception permits the police to stop and briefly detain motorists *for investigation of noncriminal traffic violations.* Police conduct during a noncriminal traffic stop does not further implicate Article I, section 9, so long as the detention is limited and the police conduct is reasonably related to the investigation of the noncriminal traffic violation. However, a police search of an individual or a vehicle during the investigation of a noncriminal traffic violation, without probable cause and either a warrant or an exception to the warrant requirement, violates Article I, section 9. Because police inquiries during a traffic stop are neither searches nor seizures, police inquiries in and of themselves require no justification and do not necessarily implicate Article I, section 9. However, police inquires unrelated to a traffic violation, when combined with physical restraint or a police show of authority, may result in a restriction of personal freedom that violates Article I, section 9."

347 Or at 624 (emphasis in original).

Similarly, in *State v. Ashbaugh,* 349 Or 297, 308-09, 244 P3d 360 (2010), the court observed that

"[t]he issue that the state raises—whether a putatively unreasonable 'seizure' was in fact 'mere conversation' with no constitutional implications—is a familiar one to this court. We long have recognized that, out of the broad range of potential encounters between police and citizens, only some implicate the prohibition in Article I, section 9, against unreasonable 'seizures.' We have divided police-citizen encounters, very roughly, into three categories: (1) 'mere conversation,' that is, noncoercive encounters that are not 'seizures' and, thus, require no justification under Article I, section 9; (2) 'stops,' a type of seizure that involves a temporary restraint on a person's liberty and that violates Article I, section 9, unless justified by, for example, necessities of a safety emergency or by reasonable suspicion that the person has been involved in criminal activity; and (3) 'arrests,' which are restraints on an individual's liberty that are steps toward charging individuals with a crime and which, under Article I, section 9, must be justified by probable cause to believe that the arrested individual has, in fact, committed a crime. The thing that distinguishes 'seizures'—that is, 'stops' and 'arrests'—from encounters

that are 'mere conversation' is the imposition, either by physical force or through some 'show of authority,' of some restraint on the individual's liberty."

As noted, defendant contends that his freedom of movement was restricted sufficiently to constitute a seizure when Jackson requested that defendant and the other passengers provide their names and dates of birth.

According to Jackson, he began to investigate whether one or more of the passengers was a minor in possession of alcohol or was an adult furnishing alcohol to a minor after he had smelled the odor of alcohol emanating from the interior of the vehicle, learned that the driver was 18 years old, believed that one of the passengers was displaying symptoms of being under the influence of a stimulant, and observed defendant and the front-seat passenger passing an item back and forth while trying to hide those actions.

It is a close question whether defendant was seized at the point that Jackson asked him and the other passengers for their identifying information. Defendant reasonably knew that Jackson was not requesting defendant's identifying information in connection with the license plate infraction, but for some other investigative purpose. Nor did Jackson say or do anything to dispel a reasonable belief that defendant and the other passengers could not leave the vehicle until Jackson had completed the identification process. Those circumstances may be sufficient to demonstrate the required nexus between verbal inquiries and a show of authority necessary to constitute a seizure for purposes of Article I, section 9. *See State v. Hall*, 339 Or 7, 19, 115 P3d 908 (2005) ("[W]e find it difficult to posit that a reasonable person would think that he or she was free to leave at a time when that person is the investigatory subject of a pending warrant check."); *State v. Magana/Rivera*, 257 Or App 251, 263, 304 P3d 780 (2013) (defendant was stopped when he was questioned in connection with a multiofficer narcotics investigation; a reasonable person in defendant's position would have believed that he was under criminal investigation and was not free to leave). However, for purposes of this opinion, we need not resolve that issue. Instead, we assume that defendant was seized and proceed to analyze whether

Jackson had reasonable suspicion to investigate the crime of furnishing alcohol to a minor and the violation of minor in possession.

Reasonable suspicion is established when an officer forms an objectively reasonable belief under the totality of the circumstances that a person may have committed or may be about to commit a crime. ORS 131.605(6); ORS 131.615(1); *State v. Mitchele,* 240 Or App 86, 91, 251 P3d 760 (2010). However, "[r]easonable suspicion 'does not require that the facts as observed by the officer conclusively indicate illegal activity but, rather, only that those facts support the reasonable inference of illegal activity by that person.'" *State v. Dampier,* 244 Or App 547, 551, 260 P3d 730 (2011) (quoting *State v. Hiner,* 240 Or App 175, 181, 246 P3d 35 (2010)). To determine whether Jackson had reasonable suspicion, we examine "the objective facts known to the officer at the time of the stop." *State v. Frias,* 229 Or App 60, 64, 210 P3d 914 (2009) (internal quotation marks omitted).

At the time that Jackson began investigating the violation of minor in possession of alcohol and the crime of furnishing alcohol to a minor, he was aware of the following facts that were unrelated to the traffic violation: (1) the vehicle was, at 9:50 p.m., in a remote location known to be frequented by people using drugs and alcohol and marked "Day Use Only-No Camping"; (2) when he spoke with the driver about the reason for the traffic stop, he could smell alcohol emanating from the vehicle's interior and could not determine whether it came from the driver, one or more of the passengers, or from the vehicle generally; (3) the front-seat passenger appeared to be under the influence of a stimulant; (4) the driver was 18 years old; and (5) the other passengers all appeared to be between the ages of 18 and 25.

Not one of those facts or circumstances is sufficient to establish reasonable suspicion. However, based on the totality of the circumstances, we conclude that Jackson had reasonable suspicion to investigate the crime of furnishing alcohol to a minor and the violation of minor in possession of alcohol at the time that he asked defendant and the other passengers for their identifying information.

Defendant contends that, absent a reasonable suspicion that defendant was lying to Jackson about his age, when defendant provided information to Jackson that indicated that he was 23 years old, any reasonable suspicion relating to minor in possession of alcohol and furnishing alcohol dissipated, and Jackson was required to end his investigation without retaining and running defendant's identification. We disagree. This court has previously observed that the existence of possible lawful explanations for circumstances or behavior does not negate the development of reasonable suspicion of criminal activity. Jackson was entitled to confirm the validity of defendant's age and identification by running the records check. *See Dampier*, 244 Or App at 553 (rejecting the argument that any reasonable suspicion of delivery of marijuana had dissipated because bicyclist denied purchasing marijuana from defendant and defendant offered an explanation for his presence in front of motel).

Once the warrants check revealed that defendant was on felony probation that included a no-alcohol clause, and when Jackson continued to smell alcohol on defendant's breath after defendant was out of the vehicle, Jackson had probable cause to detain defendant for violating a term of his probation.[5] *See Hiner*, 240 Or App at 180 (under ORS 137.545(2), an officer may stop a probationer when the officer has reasonable suspicion that the probationer has violated the terms of probation). It was at that point that defendant voluntarily consented to a search of his person. It was that search that uncovered the methamphetamine that defendant possessed.

Affirmed.

---

[5] ORS 137.545(2) provides, in part, that "[a]ny parole and probation officer, police officer or other officer with power of arrest may arrest a probationer without a warrant for violating any condition of probation * * *."