Argued and submitted August 26, reversed and remanded for new trial
December 21, 1994

## STATE OF OREGON,
*Respondent,*

*v.*

## MARGARITO VILLEGAS-VARELA,
*Appellant.*

(92D-102500, 92D-102502, 92D-102503;
CA A80526 (Control), A80527, A80528)
(Cases Consolidated)

887 P2d 809

James N. Varner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Youlee Yim You, Assistant Attorney General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

Rossman, P. J., dissenting.

**LEESON, J.**

Defendant appeals his convictions for driving under the influence of intoxicants (DUII), giving false information to a police officer and driving while suspended. ORS 813.010; ORS 807.620; ORS 811.182. He assigns error to the trial court's denial of his motion to suppress evidence. We review for errors of law, ORS 138.220, and reverse.

The facts are not in dispute. Salem police officer Leeder, the sole witness at the suppression hearing, testified that, at approximately 11:19 p.m. on April 21, 1992, he received a dispatch that a caller had reported an "intoxicated driver operating a small red vehicle with four subjects in it. The vehicle was driving erratically all over the road." The caller also gave the car's license plate number. However, the caller did not give his or her location, the location of the car, the direction it was traveling or a description of any of the occupants. The caller also did not disclose his or her name or telephone number, stating only that the caller is a member of "Salem REACT." More than an hour later, at approximately 12:40 a.m. on April 22, Leeder saw a small red vehicle with four occupants driving south on Portland Road. He followed it and, after about four or five blocks, the car pulled into a motel parking lot. Leeder did not observe any traffic infractions. He followed the car into the parking lot, saw defendant getting out, and at that time noticed that the license plate number of the car matched the one he had received from the dispatcher. He turned on his emergency lights, approached defendant and asked him for his driver's license. Leeder testified that he stopped defendant solely because of the tip the dispatcher had received from the unnamed caller. He arrested defendant for driving under the influence of intoxicants, giving false information to a police officer and driving with a suspended license.

Before trial, defendant filed a motion to suppress evidence. The trial court denied the motion, and defendant was convicted following a stipulated facts trial.

On appeal, defendant argues that the trial court erred in denying his motion to suppress. He contends that Leeder lacked reasonable suspicion to justify the stop, because the informant was anonymous and not sufficiently reliable. ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

Reasonable suspicion requires a belief "that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts." ORS 131.605(4).

■ When reasonable suspicion is based solely on a citizen informant's report, that report must contain some indicia of reliability. *State v. Shumway*, 124 Or App 131, 133, 861 P2d 384 (1993), *rev den* 318 Or 459 (1994). In *State v. Black*, 80 Or App 12, 721 P2d 842 (1986), we identified three factors that are important in determining the reliability of a citizen informant's report. One is whether the informant is exposed to possible criminal and civil prosecution if the report is false. That factor is satisfied if the informant gives his or her name to law enforcement authorities or if the informant delivers the information to the officer in person. *State v. Bybee*, 131 Or App 492, 884 P2d 906 (1994); *State v. Koester*, 117 Or App 139, 843 P2d 968 (1992), *rev den* 315 Or 644 (1993). The second factor is whether the report is based on the personal observations of the informant. An officer may infer that the information is based on the informant's personal observations if the information contains sufficient detail that

"it is apparent that the informant had not been fabricating [the] report out of whole cloth * * * [and] the report [is] of the sort which in common experience may be recognized as having been obtained in a reliable way * * *." *Spinelli v. United States*, 393 US 410, 417-18, 89 S Ct 584, 21 L Ed 2d 637 (1969).

*See also State v. Shumway, supra,* 124 Or App at 136. The final factor is whether the officer's own observations corroborated the informant's information. The officer may corroborate the tip either by observing the illegal activity or by finding the person, the vehicle and the location substantially as described by the informant. *State v. Vanness*, 99 Or App 120, 124, 781 P2d 391 (1989).

The facts in this case are similar to those in *State v. Black, supra.* In *Black,* the Oregon State Police received an anonymous telephone call from a woman in Selma, stating that a brown Ford Escort, traveling north on Highway 199,

was speeding and weaving. About 11 minutes later, a state trooper spotted a brown Ford Escort driving north on Highway 199, approximately eight miles from Selma. He did not notice any erratic driving but stopped the car based on the anonymous tip. He arrested the defendant for DUII. We said that a tip must have some indicia of reliability and identified the three factors described above for the court to consider in determining if the officer had reasonable suspicion to make a stop. We concluded that, because the caller did not identify herself, she did not expose herself to possible criminal and civil prosecution if her report was false. We also noted that we could not infer "from the meager record that she personally observed what she reported." 80 Or App at 19. Finally, we said that the officer's personal observations did not corroborate the tip, because he did not see any erratic driving or speeding. We determined that a "reasonable officer under the totality of the circumstances could not reasonably have concluded that defendant had committed or was committing a crime" and held that the stop was illegal. 80 Or App at 20.

■    In this case, the caller did not give the police dispatcher his or her name or telephone number.[1] The caller indicated only that he or she was a member of "Salem REACT." The state argues that this identification is sufficient to subject the caller to possible civil and criminal liability for making a false report, because the call could be traced back to the caller. However, the state fails to explain how that could occur.[2] Leeder stated that he believes that "Salem REACT" is a local citizens band radio club, a "kind of citizens watchdog group" that is concerned with problems in the community and whose members call the police if they see something, but he does not know what the letters "REACT" stand for. He stated that he had not had any personal contact with "Salem REACT," but that he had handled about 10 calls said to have originated from it and that each call had led to an arrest. The record contains no other information about "Salem REACT," its members, or how a call made by one of its members could be traced back to the caller.

---

[1] At the suppression hearing, Leeder was not able to testify whether the caller was male or female.

[2] The tape of the 911 call and the dispatch of the caller's information to Leeder were not introduced into evidence at the suppression hearing, the dispatcher was not examined, and no member of "Salem REACT" testified.

Nonetheless, argues the state, we have "not found that it is necessary for informants to leave their names in order for their reports to be reliable." It cites *State v. Shumway, supra,* 124 Or App at 135, and *State v. Koester, supra,* 117 Or App at 143, to support that contention.

In *State v. Shumway,* an unnamed citizen informant and a woman approached a police officer in a park and reported that a man driving a green truck was very drunk, had driven erratically, had angrily confronted other people in the park and had left the park to get more beer. The officer saw the defendant driving back into the park and stopped him. Although the officer did not observe any erratic driving, he arrested the defendant for DUII. The defendant argued that the officer did not have reasonable suspicion to justify a stop, because the informant was not sufficiently reliable. In holding that the officer did have reasonable suspicion, we said that, although the informant did not give his name to the officer, by speaking to the officer in person he potentially exposed himself to civil and criminal liability if the information was false.[3] 124 Or App at 135.

In *State v. Koester,* two state police officers were involved in a traffic stop on Interstate 5, south of Salem. Another motorist stopped and reported to them that a person driving a silver-grey Honda had pointed a pistol at him just north of Salem. He described the driver, gave the officers the license plate number and estimated that the car was then about three miles further south. He told the officers he would follow them and stop to identify the driver if they found the car. The motorist did not identify himself, and the officers did not note the license plate number of his car. The officers relayed the motorist's information to their dispatcher and learned that the registered owner lived in Corvallis. Approximately 34 minutes later, a Benton County deputy sheriff stopped the defendant's car as he was driving away from his Corvallis residence. The officer arrested the defendant for unlawful possession of a firearm.

---

[3] We also said that the officer partially corroborated the information, because he had seen the defendant's truck in the park earlier and saw the defendant return to the park in a manner consistent with the informant's report. The degree of detail in the informant's report allowed us to infer that it was based on his personal observations. *State v. Shumway, supra,* 124 Or App at 136.

We agreed with the trial court's finding that, although the informant did not identify himself, he nonetheless "knowingly subjected himself to being identified." 117 Or App at 143. We concluded that the informant's report was based on his personal observations because of the detailed description of the driver, the car, the incident, the time and the location. Both the defendant and his car matched the descriptions given by the informant, and the car was found at a time and location that were consistent with his report. We held that, considering the totality of the circumstances, the officers had reasonable suspicion to stop the defendant's car.

Unlike the informants in *Shumway* and *Koester*, the caller in this case delivered his or her report anonymously over the telephone, claiming only to be a member of "Salem REACT." The record before us contains virtually no information about that group, its membership, or how a call from an alleged member could be traced back to that person. Under these circumstances, we cannot say that the caller was exposed to possible civil and criminal liability if the report was false.

Finally, the state contends that the informant's tip was reliable, because Leeder's personal observations corroborated the report: He saw a small red car with four occupants.[4] Notably, the caller did not give a description of the defendant or any of the car's occupants and did not give the location of the car or an indication of its direction at the time of the call. Leeder stopped defendant well over an hour after the report was received by the police dispatcher. In contrast to both *Shumway* and *Koester*, we cannot say that defendant and his car were found at a time and location consistent with their location at the time of the report. Consequently, we cannot say that Leeder corroborated the report when he saw a small red car driving south on Portland Road 80 minutes later.

We conclude that, because the anonymous informant was not exposed to civil and criminal liability if the report proved false, and because Leeder did not corroborate the informant's report, the tip was not reliable. *State v. Black,*

---

[4] Leeder testified that he did not notice the car's license plate number until after the car had entered the motel parking lot, defendant had gotten out of the car, and he had stopped his patrol car behind defendant's car.

*supra.*[5] Leeder, therefore, did not have reasonable suspicion to stop defendant's car. The trial court erred in denying defendant's motion to suppress.

Reversed and remanded for new trial.

**ROSSMAN, P. J.,** dissenting.

The critical facts in this case are that a person identifying him or herself as a member of "Salem REACT" called the police, reported having seen a drunk driver on the road, described the vehicle's color, size and number of occupants, and provided the vehicle's license plate number. An officer saw the car, stopped and talked to the driver — who was already standing outside his car — and ascertained that the driver was indeed intoxicated. The driver (defendant) was arrested for and ultimately convicted of DUII.

The majority holds that defendant's conviction must be reversed because the caller did not provide his or her name and phone number and did not specify the location of defendant's car or the direction that it was traveling, and because the officer who arrested defendant did not observe any traffic infractions. To reach that conclusion, the majority relies on the legal principle that a "stop" is not supported by reasonable suspicion unless the informant's report, which gave rise to the stop, contained "some indicia of reliability." 132 Or App at 115, citing *State v. Shumway,* 124 Or App 131, 133, 861 P2d 384 (1993), *rev den* 318 Or 459 (1994). The majority then proceeds to explain how the three factors that are "important in determining the reliability of a citizen informant's report" were not present in this case. 132 Or App at 115.

---

[5] The dissent claims that we are creating a *"per se"* rule that, in the absence of the three factors, any stop will be deemed not reasonable. 132 Or App at 120. We note that the dissent joined in our opinion in *State v. Bybee, supra,* in which we articulated and applied these same factors in concluding there that the officer did have reasonable suspicion to stop the defendant. The dissent is correct that, in *State v. Vanness, supra,* 99 Or App at 123, we said that "there is no set formula to determine when an unidentified informant's tip gives rise to a reasonable suspicion that a person has committed a crime." However, in each of the relevant cases since *Vanness,* this court has consistently applied the factors first articulated in *State v. Black* in determining whether the officers had reasonable suspicion to stop the defendants. *See State v. Shumway, supra; State v. Koester, supra; State v. Girard,* 106 Or App 463, 808 P2d 1017 (1991); *State v. Mesenbrink,* 106 Or App 306, 807 P2d 319, *rev den* 312 Or 235 (1991); *State v. Walsh,* 103 Or App 517, 798 P2d 262 (1990), *rev den* 311 Or 60 (1991).

Although I agree that the three factors discussed by the majority *are* "important" in determining whether an informant's report was reliable enough to be relied on by a police officer, I would distinguish between "important" and "dispositive" factors. The majority opinion inadvertently establishes a *per se* rule that, in the absence of those three factors, any stop will be deemed "not reasonable." That, however, is not the law. Factors are just that — factors — and as such, they should be viewed as no more than components that we may *consider* in reaching a decision. The "factors" identified by the majority are not essential ingredients. That is, they do not determine the outcome that we must reach.

Having considered whether the informant's report in this case contained "indicia of reliability," and having contemplated the meaning of the statement that "there is no set formula to determine when an unidentified informant's tip gives rise to a reasonable suspicion that a person has committed a crime," *State v. Vanness*, 99 Or App 120, 123, 781 P2d 391 (1989), I would hold that there *were* indicia of reliability in this case. First, I believe that it should be of no consequence that the informant failed to specify the location of defendant's car or the direction in which it was traveling. Although that type of information will assist officers in apprehending suspects, it says little about the reliability of an informant's report that the suspect has committed a crime. Also, it is the type of information that is too susceptible to change to serve as a firm basis for ascertaining the informant's credibility. After all, the suspect could stop traveling north on I-5 and could begin traveling east on Highway 405. It is sufficient that the police dispatcher in this case could infer, from the caller's reference to his or her membership in "Salem REACT," that the caller saw defendant driving in the city of Salem. Second, the caller's failure to provide his or her name should not be deemed a fatal flaw, in light of the fact that the officer understood "Salem REACT" to be a community watchdog group which, in the officer's experience, had made a number of reports that *in each case* had led to an arrest. Third, the fact that the officer observed no traffic infractions being committed by defendant is of little import, because the officer's first contact with defendant took place after defendant had already left his car, an act which did not

take place at the behest of the officer. At that time, the officer noticed that defendant was intoxicated.

I would hold that the informant's report in this case was reliable and provided a sufficient basis for the officer to make contact with defendant to ascertain whether he was drunk. Accordingly, I dissent.