Argued and submitted June 27, affirmed November 12, 2008

# STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

# JOSHUA NATHAN HAMES,
*Defendant-Respondent.*

Marion County Circuit Court
06C47677; A133950

196 P3d 88

Jonathan H. Fussner, Attorney-In-Charge, Criminal Appeals Unit, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Bronson D. James, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

BREWER, C. J.

## BREWER, C. J.

In this prosecution for various drug offenses, the state appeals a trial court order suppressing evidence obtained as the result of a motor vehicle stop. ORS 138.060(1)(c). The state asserts that the trial court erred in concluding that the officer who performed the stop lacked reasonable suspicion to believe that defendant had committed a crime. ORS 131.615(1). We review for errors of law, ORS 138.220, and affirm.

The pertinent facts are not in dispute. At 10:30 p.m. on October 22, 2005, Officer Johnston was dispatched to respond to a report of suspicious activity in a park. The report came from a citizen informant who provided his name, address, and telephone number to the police dispatcher. The dispatcher provided Johnston with notes summarizing the informant's report via the officer's in-car computer. Those notes indicated that

"[t]he operator, the call-taker, says that the [informant] advised there were *four or five subjects tearing up a car.*

"They arrived in one black Honda Civic and a white Chevy Corsica or Lumina.

"They also reported that it sounded like they were ripping stuff off the car and going from the front of the car to the back of the car and all had flashlights.

"It was hard to get a description because it was too far away."

Johnston arrived at the park minutes after receiving the report. He got out of his patrol car and, while walking toward the park, saw two cars next to one another in the parking lot: a white Chevrolet Lumina and a gold-colored car. Johnston observed two people inside the white Lumina, but he could not see how many people were inside the gold-colored car. When both cars started up and began to leave, Johnston returned to his car and signaled both vehicles to stop by activating his overhead lights. Johnston testified that he stopped the vehicles because one of them matched the description he had received from the dispatcher, and he suspected that they had been involved in a crime. Johnston testified that he relied on the information in the informant's

report in making his decision to stop the cars. Defendant was one of two occupants of the Lumina. Johnston found drug-related evidence inside the Lumina, and he arrested defendant for several drug offenses.

Before trial, defendant moved to suppress the drug-related evidence found as a result of the stop. Defendant argued that Johnston's own observations did not sufficiently corroborate the informant's report and that, as a result, the officer lacked reasonable suspicion to believe that defendant had committed a crime. In granting defendant's motion to suppress, the trial court reasoned:

> "It's undisputed that there was a stop. The critical issue is at the moment that that officer decides to activate his lights does he have reasonable suspicion that the people that he's stopping have been involved in criminal activity.
>
> "He's got—I don't doubt the reliability of the report that he received or the fact that it's from a named person, but he's got a report that says there's a Black Honda Civic, there's a white Chevy Lumina, and people are walking around outside them basically tearing one of the cars apart. He arrives on the scene, he sees two cars, one of which matches that description and one of which apparently doesn't. He doesn't see a Black Honda Civic, he doesn't see any vehicle that looks like it's had parts ripped off, and he doesn't see anybody walking around looking like they're ripping parts off vehicles. He sees two cars stopped and in conversation.
>
> "Certainly an appropriate basis for him to stroll over and talk to them, or do something like that. But, you know, I don't think it rises to reasonable suspicion or justify a stop. So I'll grant the motion to suppress.
>
> "* * * * *
>
> "* * * [W]hat you have in the totality of the circumstances is one of the vehicles doesn't match, and the activity doesn't match what's described by the [informant]. There are not people walking around the vehicles with flashlights, there are not people ripping vehicles apart, and, moreover, there's not vehicles sitting there that look like somebody's been doing that to them recently.
>
> "You know, you might have somebody's ripping stuff off the car and then suddenly they get back into their cars, but

you don't have any observation by the officer of anything that even looks like somebody's been destructive to the car.

"And I guess the one other factor that's important to me that I'll point out is that the officer parks a distance away and walks over and observes this. So I didn't hear any testimony that this is a situation where people realize the police are coming, or see the police officer there, and rapidly, you know, stash something away. The officer's testimony is he parks a distance away and walks over to look, and still does not see the criminal activity that was being reported, or evidence of it."

The state assigns error to the trial court's ruling. The state contends that, under the totality of the circumstances, Johnston had reasonable suspicion to stop defendant's vehicle. Because there is constitutionally sufficient evidence in the record to support them, we are bound by the trial court's findings of historical fact on this issue. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Consequently, our review is limited to whether the trial court correctly concluded that the officer's suspicion was not objectively reasonable. *State v. Belt*, 325 Or 6, 11, 932 P2d 1177 (1997).

■ A peace officer may stop and temporarily detain a person in order to make a reasonable inquiry of that person if the officer "reasonably suspects" that the person has committed a crime. ORS 131.615(1). " 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 to 131.625." ORS 131.605(5). Reasonable suspicion is a less demanding standard than probable cause, *State v. Hammonds/Deshler*, 155 Or App 622, 627, 964 P2d 1094 (1998), and an officer need only form a belief that is objectively reasonable under the totality of the circumstances that an individual has committed a crime, drawing reasonable inferences from the circumstances based on the officer's experience. *State v. Loud*, 149 Or App 250, 255, 942 P2d 814, *rev den*, 326 Or 58 (1997).

■ Where, as here, the officer's suspicion is based solely on a citizen informant's report, that report must contain some indicia of reliability. *State v. Shumway*, 124 Or App

131, 133, 861 P2d 384 (1993), *rev den*, 318 Or 459 (1994). In *State v. Black*, 80 Or App 12, 19, 721 P2d 842 (1986), we identified three factors that are important in determining the reliability of a citizen informant's report. The first is whether the informant is exposed to possible criminal and civil prosecution if the report is false. That factor is satisfied if the informant gives his or her name to law enforcement authorities or if the informant delivers the information to the officer in person. *State v. Bybee*, 131 Or App 492, 495, 884 P2d 906 (1994). The second factor is whether the report is based on the personal observations of the informant. An officer may infer that the information is based on the informant's personal observations if the information contains sufficient detail that "[i]t is then apparent that the informant had not been fabricating [the] report out of whole cloth * * * [and] the report [is] of the sort which in common experience may be recognized as having been obtained in a reliable way * * *." *Spinelli v. United States*, 393 US 410, 417-18, 89 S Ct 584, 21 L Ed 2d 637 (1969); *see Shumway*, 124 Or App at 136 (inferring personal knowledge from level of detail in an informant's account). The final factor is whether the officer's own observations corroborated the informant's information. The officer may corroborate the report either by observing the illegal activity or by finding the person, the vehicle, and the location substantially as described by the informant. *Bybee*, 131 Or App at 495 (citing *State v. Vanness*, 99 Or App 120, 124, 781 P2d 391 (1989)).

■ The parties agree that this case presents a question under the "third factor" outlined by our holdings in *Black*, *Bybee*, and *Vanness*. The state contends that the informant's report was sufficiently corroborated because Johnston found a car matching the informant's description, in the location given by informant. Defendant replies that Johnston's observations did not adequately corroborate the informant's report of suspicious or illegal activity and, thus, he lacked reasonable suspicion that defendant was, or had been, engaged in criminal activity. We agree with defendant.

Our previous decisions provide a number of examples of circumstances that adequately corroborated an informant's report. In *State v. Faulkner*, 89 Or App 120, 747 P2d 1011 (1987), the desk clerk of a motel called the police

and reported that a possibly drunk man had left the motel and was driving a silver Toyota van with an Oregon license plate on Clackamette Drive. The clerk identified himself and gave a phone number. A police officer received that information from a dispatcher and observed a silver Toyota van turn onto Highway 99E from Clackamette Drive. The officer saw that the license plates matched the number given by the dispatcher. The officer did not see the defendant commit any traffic violations, but he did observe an "odd" turn. *Id*. at 122. A second officer trailing the van did not see any unusual driving, but noted that the van was traveling at a slower than average speed. *Id*. The officer stopped the vehicle and arrested the defendant for DUII. The trial court granted the defendant's motion to suppress, concluding that the officer lacked reasonable suspicion. We reversed, concluding that the officer's observations "corroborated the information reported by the desk clerk." *Id*. at 123. "[The officer] saw the van, identified by its license plate number, in the precise area where it had been reported to be heading. He observed that the defendant's driving, although not illegal, was irregular." *Id*. From the totality of those circumstances, we held, a police officer "reasonably could have concluded that defendant was driving while intoxicated." *Id*. at 124.

In *State v. Lindstrom*, 37 Or App 513, 588 P2d 44 (1978), a citizen flagged down a police officer and reported that the driver of a yellow Ford pickup had nearly forced him off the road, had "pulled a rifle on him," and appeared to be "very intoxicated." *Id*. at 515 (internal quotation marks omitted). The informant did not provide his name, and the officer did not record the informant's license plate number. *Id*. Shortly after speaking with the informant, and within a half-mile of where the conversation had taken place, the officer saw a yellow Ford pickup traveling in a normal manner and signaled the driver to pull over. The driver was then arrested for DUII. The trial court denied the defendant's motion to suppress, and we affirmed, holding that the "report of the anonymous informant constituted information of sufficient quantity and quality to give rise to a reasonable suspicion that defendant was committing an offense." *Id*. at 516.

There was a similar report of ongoing criminal activity in *Shumway*. In that case, an informant approached a police officer in a public park and reported that the driver of a green truck was "very drunk." 124 Or App at 133. The officer remembered seeing the truck in the park earlier that day, and when he saw the defendant driving back into the park, the officer stopped and subsequently arrested him for DUII. The officer did not observe any erratic driving. We concluded that the informant's report was corroborated when the officer "saw [defendant] return to the park in a manner that was consistent with the informant's story," and because the officer had seen the same truck in the park earlier that day. *Id.* at 135-36.

Likewise, in *Vanness*, a motorist approached a police officer and reported that "he had just stopped the driver of a red Ford station wagon who had been driving recklessly." 99 Or App at 122. The motorist told the officer that the driver appeared intoxicated and asked the officer to keep an eye on him; he also told the officer that the Ford was parked around the corner. Minutes later, the officer saw the Ford pulling out of a parking lot onto Highway 212. The officer did not observe any erratic driving, but immediately pulled the vehicle over and subsequently arrested the driver for DUII. In affirming the trial court's denial of the defendant's motion to suppress, we held that the officer's "own observations corroborated what the citizen had reported to the extent that, when he drove around the corner, he observed the described vehicle leaving the reported parking lot." *Id.* at 124.

In *State v. Girard*, 106 Or App 463, 465, 808 P2d 1017 (1991), a named informant called the Lincoln County Emergency Network and reported that a "very intoxicated" person had just driven away from a gas station at high speed in a four-door Mercedes and that the vehicle was headed north on Highway 101. The informant said there were four people in the car, and that the driver was a man in his late thirties with black hair, wearing a plaid shirt. The dispatcher relayed the information to an officer who, after observing a car matching that description, began following it. The officer could see that there were more than two people inside, but could not see the driver. The officer did not observe any traffic

violations or unusual driving. The officer stopped the car and arrested the defendant for DUII. *Id.* The trial court denied the defendant's motion to suppress, and we affirmed:

> "The officer observed the described car traveling in the direction given by the informant. The officer's observation that there was nothing irregular about the way that the car was being driven does not, in and of itself, detract from the information given by the informant to the dispatcher. Under the totality of the circumstances, the information possessed collectively by the arresting officer and the dispatcher gave rise to a reasonable suspicion that the driver of the car was driving under the influence of intoxicants."

*Id.* at 467.

In *State v. Koester*, 117 Or App 139, 843 P2d 968 (1992), *rev den*, 315 Or 644 (1993), a motorist traveling south on I-5 stopped alongside two officers and reported that the driver of a silver-gray Honda had pointed a pistol at him on the freeway. The motorist told the officers that the driver of the Honda was a white male and was alone in the car. 117 Or App at 141. The motorist also gave the officers a license plate number for the car. The license plate revealed that the registered owner had a Corvallis address, and the Oregon State Police dispatcher relayed that information to the Benton County sheriff's office. A sheriff's deputy drove to that address and saw a silver-gray Honda with the same license plate driving away. The deputy stopped the car and found a gun underneath the seat. The defendant moved to suppress the gun, arguing that the deputy had lacked probable cause to believe that he had committed a crime. *Id.* at 142. The trial court denied the motion, and we affirmed:

> "The circumstances suggest that the motorist's report was worthy of belief. He made his report on the basis of personal observation and provided a detailed description of the driver, the car, the incident, the time and the location. In addition, the car that [the sheriff] stopped in Corvallis matched the reported car in color, model and license number. As reported, it was being driven by a white male who was alone. The car was found in a location consistent with its having been on the freeway at the time and place of the reported incident. * * *
>
> "* * * * *

"Considering the totality of the circumstances, at the time of defendant's arrest there was a substantial objective basis for believing that he had committed a crime."

*Id.* at 143-44.

Our decisions also provide examples of circumstances in which an informant's report was *not* adequately corroborated. In *State v. Villegas-Varela*, 132 Or App 112, 118, 887 P2d 809 (1994), an officer stopped the defendant "well over an hour" after the informant's report was received; the report had not given the location of the defendant's car or an indication of its direction at the time of the call, and, therefore, we could not say that the defendant and his car had been found at a time and location consistent with their location at the time of the report. Similarly, in *State v. Hyder*, 90 Or App 317, 319, 752 P2d 327 (1988), we held that the officer's own observations had contradicted the report she received from three children who had told her that a van was following them. After speaking with the children, the officer observed the van stopped half a block down the street, headed away from the children. She stopped the van and arrested the defendant for driving with a suspended license. Because there was no other information, the officer had seen no criminal activity, and the officer's own observations contradicted the information she had received, we held that the facts did not provide reasonable suspicion. *Id.* at 320.

Finally, in *Black*, the police received an anonymous telephone call, stating that a brown Ford Escort, traveling north on Highway 199, was speeding and weaving. About 11 minutes later, an officer spotted a brown Ford Escort driving north on Highway 199, approximately 11 miles from Selma. He did not notice any erratic driving but stopped the car based on the anonymous report. He arrested the defendant for DUII. We concluded that the officer's personal observations did not corroborate the report, because he did not see any erratic driving or speeding. We determined that a "reasonable officer under the totality of the circumstances could not reasonably have concluded that defendant had committed or was committing a crime." 80 Or App at 20.

We dealt with this question most recently in *State v. Goss*, 219 Or App 645, 184 P3d 1155, *rev den*, 345 Or 94

(2008). There, police received a report of a possibly intoxicated driver who had parked her car at a drive-in restaurant. The two informants were employees of the restaurant and provided their names and the restaurant's phone number. They also provided the dispatcher with the defendant's name, which they had obtained from a credit card slip, along with a description of her vehicle and physical appearance. The responding officer arrived at the restaurant within 10 minutes of the informants' call and parked behind the defendant's vehicle. The informants told the officer that the defendant was using the restroom in the back of the building. An unidentified person yelled at the officer that "they went that way * * * into the parking lot of [a motel]." *Id.* at 648. The officer walked toward the motel and saw a female matching the informants' description of the defendant. The officer also saw that she appeared intoxicated; he administered a field sobriety test and arrested the defendant for driving under the influence. *Id.*

The defendant moved to suppress the evidence leading to her arrest and the trial court granted the motion, holding that the officer lacked reasonable suspicion to stop the defendant because the informants had not testified to specific reasons why they believed defendant was intoxicated. *Id.* at 648-49. We reversed, holding that that it was irrelevant whether the informants' belief that the defendant was intoxicated was reasonable or not. *Id.* at 652. What was relevant were the facts known to the officer at the time he encountered the defendant. The informants' report had been corroborated because the officer "found defendant and her vehicle substantially in the same area as reported * * * and defendant was found only a short distance away." *Id.* at 651.

We conclude that the circumstances here are more analogous to those in *Black, Villegas-Varela*, and *Hyder* than to those cases where we have concluded that an informant's report was adequately corroborated. Johnston arrived at the park within minutes of receiving the report from the police dispatcher. When he arrived, he saw two cars—a white Chevrolet Lumina reported by the informant and a second, gold-colored car. Johnston did not see a black Honda Civic, as reported by the informant. What we find significant from these facts is the absence of a *victim* car. Although the

informant may have been mistaken regarding the color and make of the second car, the informant reported a car being vandalized. Johnston saw no evidence of a vandalized car. The second, gold-colored car was undamaged. That discrepancy, coupled with the proximity in time of the informant's report and Johnston's arrival at the scene, make it less likely that a reasonable officer under the same circumstances could have concluded that defendant was engaging, or had engaged in, the reported criminal activity.

The totality of the circumstances also includes what an officer does not observe. As we noted in *Hyder*, if an officer observes activity that contradicts an informant's report, that contradiction can weigh against a finding of reasonable suspicion. Here, not only was no vandalized car at the location, but Johnston did not observe any individuals with flashlights circling cars or any indication that such activity had recently ended; nor were there any "furtive movements" on the part of the individuals in the two cars. In order to corroborate an informant's report, an officer must either observe the illegal activity or find the person, the vehicle, and the location substantially as described by the informant. *Bybee*, 131 Or App at 495. Because the scene that Johnston observed on his arrival at the park was not "substantially as described by the informant," the trial court did not err in granting defendant's motion to suppress.

Affirmed.