816 March 12, 2025 No. 222

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JEREMY JACOB KUHN,
*Defendant-Appellant.*

Deschutes County Circuit Court
21CR50924; A180615

Raymond D. Crutchley, Judge.

Submitted August 28, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and James Brewer, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Erica L. Herb, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Pagán, Judge, and Mooney, Senior Judge.

MOONEY, S. J.

Affirmed.

**MOONEY, S. J.**

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010, entered after a conditional guilty plea. He argues that the trial court erred in denying his motion to suppress evidence obtained during a traffic stop that was not supported by reasonable suspicion. We conclude that the trial court did not err in denying defendant's motion to suppress. We affirm.

A police officer may stop and temporarily detain a person if the officer reasonably suspects—based on specific and articulable facts—that the person committed a specific crime or type of crime. *State v. Hames*, 223 Or App 624, 628, 196 P3d 88 (2008); *see also* ORS 131.615(1) ("A peace officer who reasonably suspects that a person has committed or is about to commit a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."). "For a court to determine that an investigative stop was lawful under Article I, section 9, [of the Oregon Constitution[1]], the court (1) must find that the officers actually suspected that the stopped person had committed a specific crime or type of crime, or was about to commit a specific crime or type of crime, and (2) must conclude, based on the record, that the officers' subjective belief—their suspicion—was objectively reasonable under the totality of the circumstances existing at the time of the stop." *State v. Maciel-Figueroa*, 361 Or 163, 182, 389 P3d 1121 (2017). Reasonable suspicion is a less demanding standard than probable cause. *Hames*, 223 Or App at 628.

A citizen's report may form the basis of reasonable suspicion provided it is reliable. As we evaluate the reliability of a citizen's report, we consider three factors: (1) "whether the informant is exposed to possible criminal and civil prosecution if the report is false," (2) "whether the report is based on the personal observations of the informant," and (3) "whether the officer's own observations

---

[1] Article I, section 9, of the Oregon Constitution provides: "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

corroborated the informant's information." *Id.* at 629. Those three factors are not dispositive on the question of reliability but are intended instead "to serve as an aid in evaluating the reliability of a [citizen] report." *State v. Mitchele*, 240 Or App 86, 92-93, 251 P3d 760 (2010) ("[A]lthough the second factor is not satisfied in the strictest sense," the report was reliable.). Whether a report is reliable "rests on the particular circumstances in each case[.]" *State v. Killion*, 229 Or App 347, 356, 211 P3d 367 (2009).

We review the trial court's suppression ruling for legal error and are bound by the trial court's factual findings that are supported by constitutionally sufficient evidence. *State v. Fuller*, 296 Or App 425, 426, 438 P3d 431 (2019). The pertinent facts, drawn from the record in accordance with that standard, are as follows: Officer Rasmussen was on patrol, riding in the passenger seat of a Redmond patrol vehicle while training another officer. Dispatch reported that it was receiving an inordinate number of "traffic complaints" concerning what callers described as "gunfire coming from a vehicle," "machine gun fire," or "a car backfiring," in the southwest part of town, involving "a small red sports car" with a "Trailblazer sticker." Dispatch told Rasmussen that they could hear "the vehicle backfiring" during the calls. Rasmussen could hear a vehicle backfiring in the distance when he was contacted by dispatch. At that point, Rasmussen believed that the driver was intentionally trying to cause some sort of disturbance and he had a hunch that the vehicle belonged to defendant.

Rasmussen was familiar with defendant from prior police contact for other complaints related to defendant's red Jetta. He was aware that defendant lived in southwest Redmond and that he had a Portland Trailblazers sticker on the back of his Jetta. Rasmussen had heard defendant's Jetta backfire and he was aware that it backfired loudly "due to *** computer electronic tuning" that was "intentional" and "designed to do that *** for effect." With that knowledge, Rasmussen drove to defendant's residence and observed that defendant's red Jetta was not there.

Rasmussen then received a second batch of calls reporting a physical fight in the parking lot of the Obsidian

Apartments located in the southwest part of town. The callers reported that a red vehicle with a Portland Trailblazers sticker making loud backfiring sounds was there. Suspecting that defendant might be involved, Rasmussen drove to an intersection that he thought defendant might cross through on his way home from the Obsidian Apartments, and he did, in fact, see defendant driving his red Jetta at that point. Rasmussen initiated a traffic stop because he believed that defendant had committed the crimes of disorderly conduct[2] and reckless driving. He cited defendant and impounded his vehicle.

At trial, defendant argued that Rasmussen's stop was not justified by either probable cause of a traffic violation or reasonable suspicion of a crime. Defendant moved to suppress all evidence obtained as a result of that stop. The trial court denied the motion. On appeal, defendant argues that the trial court should have granted his motion because Rasmussen's suspicion was based on unreliable citizen reports that rendered his suspicion unreasonable. We disagree.

We recognize that the state did not offer evidence establishing the identity of the persons who called to register their concerns. But the totality of all the circumstances articulated by Rasmussen—including the level of detail contained within the citizen reports and the sheer volume of those detailed reports, Rasmussen's prior contact with defendant and familiarity with defendant's vehicle, his observation that defendant's vehicle was not parked at his residence and the fact that Rasmussen heard the distinct backfiring sounds coming from defendant's part of town—was enough to support reasonable suspicion to stop defendant for disorderly conduct. *See, e.g., State v. Bybee*, 131 Or App 492, 495, 884 P2d 906 (1994) (explaining that an officer may corroborate a report "either by observing the illegal activity or by finding the person, the vehicle and the location substantially as described by the informant").

Affirmed.

---

[2] As relevant here, a person commits second degree disorderly conduct "if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person *** [m]akes unreasonable noise[.]" ORS 166.025(1)(b).